# UNITED STATES COURT OF INTERNATIONAL TRADE

|  |  |
|---|---|
| LONGI SOLAR TECHNOLOGY (U.S.), INC.<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES, UNITED STATES CUSTOMS AND BORDER PROTECTION, and CHRIS MAGNUS, in his official capacity as Commissioner of United States Customs and Border Protection<br><br>Defendants. | Court No. 22-00212 |

## **COMPLAINT**

1. Plaintiff, LONGi Solar Technology (U.S.), Inc. ("LONGi"), by and through its attorneys, brings this action to challenge Presidential Proclamation 10101 of October 10, 2020. *To Further Facilitate Positive Adjustment to Competition From Imports of Certain Crystalline Silicon Photovoltaic Cells (Whether or Not Partially or Fully Assembled Into Other Products)*, 85 Fed. Reg. 65,639 (Oct. 16, 2020) ("Modification Proclamation"). The Modification Proclamation has resulted in imposition of hundreds of millions of dollars in additional tariffs on Plaintiff's imported crystalline silicon photovoltaic ("CSPV") solar panels, which are essential to the deployment of clean, solar energy in the United States.

2. The Modification Proclamation was the last attempt by the prior presidential administration (the Trump Administration) to increase Section 201 safeguard duties on imported solar panels. The Trump Administration twice previously sought to withdraw the exclusion of bifacial solar panels from the CSPV safeguard measure. Both of those attempts were enjoined as

1

likely unlawful, because the Trump Administration failed to abide by the requirements of the Administrative Procedure Act and failed to offer a reasoned basis for withdrawing the exclusion—an exclusion that the Trump Administration had previously found to be consistent with the objectives of the safeguard measure.

3. While the prior attempts to withdraw the bifacial module exclusion remained enjoined, then-President Trump issued the Modification Proclamation, which again withdrew the exclusion for bifacial solar panels. President Trump further asserted that the exclusion that his Administration had granted for bifacial solar panels had impaired the remedial effect of the CSPV safeguard measure. President Trump then relied on that finding to justify an increase in the tariff rate for all CSPV products in the fourth year of the CSPV safeguard measure, from 15% to 18%.

4. The Modification Proclamation was just as unlawful as the Trump Administration's prior attempts to withdraw the bifacial module exclusion, albeit for different reasons. In issuing the Modification Proclamation, President Trump relied on a statutory provision that was intended only to liberalize trade when the protections of the original safeguard measure were no longer necessary. Instead, he used this provision to increase restrictions on trade. Moreover, President Trump failed to make the findings that the relevant statutory provision requires before modification of a safeguard measure pursuant to it. President Trump additionally failed to abide by the procedures established by Congress for re-imposing safeguard duties on articles that had previously been subject to safeguard duties. In these respects, the Modification Proclamation was similar to the prior attempts to withdraw the bifacial panel exclusion, as the Trump Administration failed to follow the required procedures and to make the necessary findings before acting.

5.      The imposition of safeguard duties was an extraordinary act. Congress created a statutory scheme intended to balance the interests of all affected parties, and the procedures that Congress created for imposing and modifying safeguard measures were meant to be followed. The President cannot ignore them or rewrite them himself to achieve his desired policy outcomes. Plaintiff accordingly asks that the court set aside the Modification Proclamation and order U.S. Customs and Border Protection ("CBP") to refund duties collected from Plaintiff as importer of record pursuant to the Modification Proclamation on imports after October 25, 2020, but before February 7, 2022.

**THE PARTIES**

6.      Plaintiff is a leading clean energy company incorporated in Delaware and headquartered in San Ramon, California. It is a wholly owned subsidiary of LONGi Green Energy Technology Co., Ltd., a world leading manufacturer of high-efficiency mono-crystalline solar cells and modules.

7.      Defendant United States is the federal government of the United States of America.

8.      Defendant United States Customs and Border Protection is an executive agency of the U.S. Government and a component of the Department of Homeland Security. It is headquartered at 1300 Pennsylvania Avenue, N.W., Washington, D.C. 20229.

9.      Defendant Chris Magnus is currently the Commissioner of CBP. He is sued in his official capacity.

**JURISDICTION**

10.     This Court has jurisdiction pursuant to 28 U.S.C. § 1581(i)(1)(B)-(D).

11. The tariff rate quota on solar cells and the additional tariff imposed on solar modules, including those ordered to be re-imposed on bifacial solar modules, were imposed pursuant to Section 201 of the Trade Act of 1974. Chapter 1 of title II of the Trade Act of 1974, which includes Section 201, is a law "providing for . . . tariffs, duties, fees, or other taxes on the importation of merchandise for reasons other than the raising of revenue" and "quantitative restrictions on the importation of merchandise for reasons other than the protection of the public health or safety." This action thus arises out of a law described in 28 U.S.C. § 1581(i)(1)(B) and (C).

12. Plaintiff seeks a declaration that the Modification Proclamation is unlawful and seeks refunds of duties paid pursuant to it. Plaintiff's claims thus also arise out of the "administration and enforcement with respect to matters referred to in subparagraphs (A) through (C)" of 28 U.S.C. § 1581(i)(1), and the Court therefore has jurisdiction under 28 U.S.C. § 1581(i)(1)(D) as well.

## **STANDING**

13. As a party adversely affected or aggrieved by the increase in safeguard duties stemming from the Modification Proclamation, Plaintiff has standing to challenge the Proclamation and resulting duties.

14. Plaintiff imports solar modules, including bifacial solar modules, for use in the development of solar projects. These modules are directly subject to the challenged Modification Proclamation. Plaintiff faces substantial injury as a result of the re-imposition of safeguard duties on bifacial CSPV panels and the increase in the duty rate on imported CSPV panels in the fourth year of the safeguard measure. Plaintiff was directly responsible for payment of these increased

duties, which increases Plaintiff's costs of doing business and reduces its ability to serve solar projects throughout the United States.

**TIMELINESS OF THIS ACTION**

15. An action under 28 U.S.C. § 1581(i) must be commenced within two years after the cause of action first accrues. 28 U.S.C. § 2636(i).

16. The Modification Proclamation was published in the Federal Register on October 16, 2020. Plaintiff's claims accrued, at the earliest, on the date that the Modification Proclamation published in the Federal Register. Plaintiff has therefore timely filed this action.

**HISTORY REGARDING THE CHALLENGED CONDUCT**

*Issuance of the Solar Safeguard Measure*

17. On May 23, 2017, the U.S. International Trade Commission ("ITC") initiated a "safeguard" investigation under Chapter 1 of title II of the Trade Act of 1974, 19 U.S.C. § 2251 et seq., of CSPV cells (whether or not partially assembled into other products). *See Crystalline Silicon Photovoltaic Cells (Whether or Not Partially or Fully Assembled Into Other Products)*; *Institution and Scheduling of Safeguard Investigation and Determination That the Investigation Is Extraordinarily Complicated*, 82 Fed. Reg. 25,331 (Int'l Trade Comm'n June 1, 2017). CSPV cells are products that convert the sun's energy into electricity.

18. On November 13, 2017, the ITC transmitted to the President a report on its investigation, finding that certain CSPV products were being imported into the United States in such increased quantities as to be a substantial cause of serious injury, or threat of serious injury, to the domestic industry producing a like or directly competitive article. *See* Presidential Proclamation 9693, *To Facilitate Positive Adjustment to Competition From Imports of Certain Crystalline Silicon Photovoltaic Cells (Whether or Not Partially or Fully Assembled Into Other*

*Products) and for Other Purposes*, 83 Fed. Reg. 3541, 3541 (Jan. 25, 2018). The ITC submitted a supplemental report on December 27, 2017 identifying unforeseen developments that led to the importation of CSPV products into the United States in such increased quantities as to be a substantial cause of serious injury. *Id*.

19. Following receipt of the ITC reports and the Commissioners' recommendations regarding the appropriate actions to address the serious injury to the domestic industry, the President issued Proclamation 9693 on January 23, 2018, imposing a safeguard measure of a type described in Section 203(a)(3) of the Trade Act with regard to certain CSPV products. *See id*. at 3541-51. As relevant to this case, the President imposed a tariff rate quota on CSPV cells and an additional duty on CSPV modules at the following rates:

> If entered during the period from
>
> February 7, 2018 through February 6, 2019 ………. 30%
>
> If entered during the period from
>
> February 7, 2019 through February 6, 2020 ………. 25%
>
> If entered during the period from
>
> February 7, 2020 through February 6, 2021 ………. 20%
>
> If entered during the period from
>
> February 7, 2021 through February 6, 2022 ………. 15%

*Exclusion of Bifacial CSPV Modules*

20. Presidential Proclamation 9693 also provided that "[w]ithin 30 days after the date of this proclamation, the USTR [United States Trade Representative] shall publish in the *Federal Register* procedures for requests for exclusion of a particular product from the safeguard measure established in this proclamation. If the USTR determines, after consultation with the Secretaries

of Commerce and Energy, that a particular product should be excluded, the USTR is authorized, upon publishing a notice of such determination in the *Federal Register*, to modify the HTS provisions created by Annex I to this proclamation to exclude such particular product from the safeguard measure . . . ." *Id*. at 3543-44.

21. On February 14, 2018, USTR published a notice setting out the procedures to request a product exclusion and opened a public docket on the Federal eRulemaking Portal, http://www.regulations.gov, for the submission of exclusion requests and comments regarding submitted requests. *See Procedures To Consider Additional Requests for Exclusion of Particular Products From the Solar Products Safeguard Measure*, 83 Fed. Reg. 6670 (USTR Feb. 14, 2018). USTR's notice did not restrict who could request an exclusion. *See id*. USTR required exclusion requests to be received by March 16, 2018 and any responsive comments to be received by April 16, 2018. *See id*. at 6670, 6672. USTR stated that it would "evaluate each request on a case-by-case basis" and "grant only those exclusions that do not undermine the objectives of the safeguard measures." *Id*. at 6671. The notice establishing the exclusion process did not include any reference to the possibility that a granted exclusion could be modified or withdrawn at a later date.

22. Several interested parties timely filed exclusion requests with USTR or commented on exclusion requests filed with USTR for bifacial modules and bifacial solar cells, which are products that absorb light and generate electricity on each side of the panel or cell. *See Exclusion of Particular Products From the Solar Products Safeguard Measure*, 84 Fed. Reg. 27,684, 27,684 (USTR June 13, 2019).

23. Because light is absorbed and electricity is generated from each side of a bifacial solar panel, bifacial panels increase total energy production. A single bifacial module increases

energy output between 5% and 20%, which means that for the same project, using monofacial modules would require more panels, more racking, more land, and more foundation to achieve the same energy output.

24. On June 13, 2019, USTR published a notice in the Federal Register granting an exclusion from the safeguards action for "bifacial solar panels that absorb light and generate electricity on each side of the panel and that consist of only bifacial solar cells that absorb light and generate electricity on each side of the cells." *Exclusion of Particular Products From the Solar Products Safeguard Measure*, 84 Fed. Reg. at 27,685. In granting the exclusion, USTR stated that it had evaluated the factors laid out in the February 14, 2018 notice, including the requirement that the exclusion not undermine the objectives of the safeguard measures. *See id*. at 27,684. USTR's notice did not contain any indication that the granted exclusion might be revisited, modified, or withdrawn in the future.

### *USTR's Attempts to Withdraw the Bifacial CSPV Module Exclusion and Resulting Litigation*

25. On October 9, 2019, USTR published a notice in the Federal Register that the exclusion for bifacial solar panels would be withdrawn, effective October 28, 2019, meaning that imported bifacial CSPV products would again be subject to the CSPV safeguard action. *See Withdrawal of Bifacial Solar Panels Exclusion to the Solar Products Safeguard Measure*, 84 Fed. Reg. 54,244 (USTR Oct. 9, 2019). The withdrawal of the bifacial module exclusion was not subject to any formal notice and comment.

26. Invenergy Renewables, LLC ("Invenergy"), a purchaser of imported bifacial panels, instituted an action in the U.S. Court of International Trade challenging the withdrawal of the bifacial panel exclusion by filing a summons, complaint, and motion for a temporary restraining order. *See Invenergy Renewables, LLC et al. v. United States et al.*, Court No. 19-

8

00192 (Ct. Int'l Trade). The Solar Energies Industry Association ("SEIA") intervened in that action as a plaintiff-intervenor.

27. On November 7, 2019, the Court issued a temporary restraining order preventing USTR's initial withdrawal of the bifacial module exclusion from going into effect, and the Court extended the temporary restraining order by 14 days on November 21, 2019. The Court issued a preliminary injunction on December 5, 2019, prohibiting the withdrawal of the bifacial module exclusion "until entry of final judgment as to Plaintiffs' claims against Defendants in this case." *Invenergy Renewables LLC v. United States*, 422 F. Supp. 3d 1255, 1295 (2019).

28. In its opinion accompanying the preliminary injunction order, the Court concluded that plaintiffs had standing to challenge the withdrawal of the bifacial module exclusion. *Id*. at 1271, 1279-80. The Court then went on to address the four factors traditionally associated with requests for preliminary injunctions: (1) whether the plaintiff is likely to succeed on the merits; (2) whether the plaintiff likely would suffer irreparable harm without the preliminary injunction; (3) whether the balance of hardships favors the plaintiff; and (4) whether the preliminary injunction would serve the public interest. The Court concluded that all four factors weighed in favor of issuing a preliminary injunction. *Id*. at 1280. On the issue of likelihood of success, the Court concluded that the plaintiffs had established a fair likelihood of success that USTR violated the notice-and-comment rulemaking requirements of the Administrative Procedure Act ("APA"). *Id*. at 1281-87. The Court also concluded that USTR's decision to withdraw the bifacial module exclusion was likely arbitrary and capricious. *Id*. at 1287-88.

29. Following entry of the preliminary injunction, USTR published a notice in the *Federal Register* establishing a procedure to consider the withdrawal of the bifacial module

exclusion and inviting comments as to whether USTR "should maintain the exclusion of bifacial solar panels from the safeguard measure, withdraw the exclusion, or take some other action within his authority with respect to this exclusion." *See Procedures To Consider Retention or Withdrawal of the Exclusion of Bifacial Solar Panels From the Safeguard Measure on Solar Products*, 85 Fed. Reg. 4756, 4756 (USTR Jan. 27, 2020). USTR stated that "[i]f the U.S. Trade Representative determines after receipt of comments pursuant to this notice that it would be appropriate to withdraw the bifacial module exclusion or take some other action with respect to this exclusion, the U.S. Trade Representative will request that the Court lift the injunction" against withdrawing the exclusion. *Id*.

30. LONGi timely submitted comments and information in support of maintaining the bifacial module exclusion.

31. Following this comment process, USTR published a determination in the Federal Register on April 17, 2020 again stating that the bifacial module exclusion should be completely withdrawn. *Determination on the Exclusion of Bifacial Solar Panels From the Safeguard Measure on Solar Products*, 85 Fed. Reg. 21,497 (USTR Apr. 17, 2020) (hereinafter, the "April USTR Notice"). The April USTR Notice explained that "the U.S. Trade Representative will request that the U.S. Court of International Trade lift the order preliminarily enjoining the withdrawal from entering into effect." *Id*. at 21,497. The April USTR Notice failed to cite to or discuss any individual submission that was placed on the record by interested parties, and many of the arguments and proposals raised were left completely unaddressed.

32. The Government first moved to lift the preliminary injunction on April 16, 2020, the day before the April USTR Notice was actually published in the *Federal Register*. On May 27, 2020, the Court issued an opinion denying the Government's motion to dissolve the

preliminary injunction, finding that the Government had not proved sufficiently changed circumstances to dissolve the preliminary injunction. *Invenergy Renewables LLC v. United States*, 450 F. Supp. 3d 1347, 1363-64 (2020). The Court also granted the plaintiffs' motions to amend their complaints to include a challenge to the April USTR Notice. *Id*. at 1358.

33. In response to the Court's May 27, 2020 opinion, USTR published a notice on June 12, 2020 purporting to rescind USTR's original October 2019 notice withdrawing the bifacial module exclusion. *Rescission of the First Withdrawal of the Bifacial Solar Panels Exclusion From the Safeguard Measure on Solar Products*, 85 Fed. Reg. 35,975 (USTR June 12, 2020). On the same day, the Government filed a renewed motion to dissolve the preliminary injunction.

34. The Court issued an opinion on October 15, 2020, denying the Government's second motion to dissolve the preliminary injunction and granting the plaintiffs' cross-motion to modify the preliminary injunction to explicitly cover the April USTR Notice. *Invenergy Renewables LLC v. United States*, 476 F. Supp. 3d 1323 (Ct. Int'l Trade 2020). The Court held that the April USTR Notice was likely arbitrary and capricious, which warranted modification of the preliminary injunction. *Id*. at 1350. The Court further held on the merits that USTR's original October 2019 notice violated the APA for the reasons stated in the December 5, 2019 opinion accompanying the preliminary injunction order. *Id*. at 1340. The Court therefore vacated USTR's original withdrawal notice. *Id*.

### *Presidential Modification Proclamation*

35. Just days prior to the issuance of the Court's October 15, 2020 opinion, President Trump issued the Modification Proclamation, effective October 25, 2020. 85 Fed. Reg. at

65,640-42. The Modification Proclamation was published in the *Federal Register* on October 16, 2020.

36. The Modification Proclamation—the Government's *third* attempt to withdraw the bifacial CSPV module exclusion—had three primary effects.

37. First, the Modification Proclamation re-imposed Section 201 safeguard duties on bifacial modules. *Id*. at 65,640, 65,642.

38. Second, the Modification Proclamation also increased Section 201 safeguard tariffs on imported CSPV products, including but not limited to bifacial CSPV modules, in year four of the CSPV safeguard measure (February 7, 2021 through February 6, 2022) from 15% to 18%. The stated rationale for this tariff increase was that the exclusion of bifacial modules had supposedly impaired the remedial effect of the original safeguard measure.

39. Finally, the Modification Proclamation modified the Harmonized Tariff Schedule of the United States ("HTSUS") to reflect the re-imposition of Section 201 safeguard duties on bifacial CSPV modules and the increase in the Section 201 duty rate for year four of the CSPV safeguard measure. *Id*. at 65,640-42.

40. As authority for the action taken in the Modification Proclamation, the President cited section 204(b)(1)(B) of the Trade Act of 1974, 19 U.S.C. § 2254(b)(1)(B), which allows the President to reduce, modify, or terminate Section 201 safeguard measures if he "determines, after a majority of the representatives of the domestic industry submits to the President a petition requesting such reduction, modification or termination on such basis, that the domestic industry has made a positive adjustment to import competition." The President asserted that he had received a petition from the domestic industry, and he found that the domestic industry "has begun to make positive adjustments to import competition." 85 Fed. Reg. at 65,640. The

President did not specify to which petition he was referring, and Plaintiff is not aware of any petition having actually been submitted to the President.

42. The plaintiffs in the *Invenergy* litigation filed motions in Court No. 19-00192 to supplement their complaints to include challenges to the Modification Proclamation and to modify the existing preliminary injunction to cover the Modification Proclamation. The Court issued a temporary restraining order on October 24, 2020, barring the Government from enforcing the Modification Proclamation. *Invenergy Renewables LLC v. United States*, 482 F. Supp. 3d 1344, 1351 (Ct. Int'l Trade 2020). The Court extended the temporary restraining order on November 6, 2020. *Id*. In an opinion issued on November 19, 2020, the Court denied the motions to supplement the complaints and concluded that any further recourse regarding the Modification Proclamation should be sought through a separate action. *Id*. at 1357.

42. In the November 29, 2020 opinion, the Court also lifted the temporary restraining order and denied the motion to modify the preliminary injunction. *Id*. CBP subsequently issued a bulletin advising that "CBP will begin enforcing the revocation of the [bifacial module exclusion] on merchandise entered or withdrawn from warehouse for consumption on or after 12:01 a.m. October 25, 2020." U.S. Customs and Border Protection Cargo Systems Messaging Service Message No. 45000915 (Nov. 27, 2020).

43. On December 29, 2020, SEIA, Invenergy, EDF Renewables, Inc., and NextEra Energy, Inc. followed the Court's direction and instituted a separate court action specifically to seek recourse regarding the Modification Proclamation. *See Solar Industries Association et al. v. United States et al.*, Court No. 20-03941 (Ct. Int'l Trade). On November 16, 2021, the Court granted summary judgment in favor of the plaintiffs and set aside the Modification Proclamation as unlawful. *Invenergy Renewables LLC v. United States*, 552 F. Supp. 3d 1382 (Ct. Int'l Trade

2021). The defendants appealed that decision to the U.S. Court of Appeals for the Federal Circuit Court on January 14, 2022. *See Solar Energy Industries Association et al. v. United States et al.*, Court No. 2022-1392 (Fed. Cir.). This appeal is currently pending.

44. In February 2022, President Biden extended the safeguard measure pursuant to section 203(e)(1)(B)(i), but specifically excluded bifacial panels and set the duty rates for the extension period below 15 percent. Proclamation 10339, *To Continue Facilitating Positive Adjustment to Competition From Imports of Certain Crystalline Silicon Photovoltaic Cells (Whether or Not Partially or Fully Assembled Into Other Products)*, 87 Fed. Reg. 7,357 (Feb. 4, 2022).

*Impact of the Modification Proclamation*

45. The Modification Proclamation has caused significant economic and business reputational harm to Plaintiff. The Modification Proclamation resulted in hundreds of millions of dollars in additional tariffs being applied to its imported CSPV products.

46. Plaintiff brings this complaint seeking a declaration that the President's Modification Proclamation is unlawful.

47. Plaintiff also seeks an order that any increased Section 201 duties collected from it pursuant to the Modification Proclamation be refunded, with interest.

**STATEMENT OF CLAIMS**

48. In the following respects the President's Modification Proclamation and its implementation are not in accordance with law.

**COUNT ONE**

**(DECLARATORY JUDGMENT—VIOLATION OF SECTION 204 OF THE TRADE ACT)**

14

49. Paragraphs 1 through 48 of this Complaint are hereby incorporated by reference.

50. A presidential action may be set aside if the President's action involves "a clear misconstruction of the governing statute, a significant procedural violation, or action outside delegated authority." *Silfab Solar, Inc. v. United States*, 892 F.3d 1340, 1346 (Fed. Cir. 2018); *Maple Leaf Fish Co. v. United States*, 762 F.2d 86, 89 (Fed. Cir. 1985); *Motion Systems Corp. v. Bush*, 437 F.3d 1356, 1361 (Fed. Cir. 2006) (en banc) (stating that court may consider whether the President has violated an explicit statutory mandate). The Declaratory Judgment Act authorizes any court of the United States to "declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a).

51. In modifying the CSPV safeguard measure, President Trump invoked Section 204(b)(1)(B), 19 U.S.C. § 2254(b)(1)(B). That section provides in relevant part that:

> Action taken under section 2253 of this title [Section 203 of the Trade Act] may be reduced, modified, or terminated by the President if the President . . . determines, after a majority of the representatives of the domestic industry submits to the President a petition requesting such reduction, modification, or termination on such basis, that the domestic industry has made a positive adjustment to import competition.

52. Section 204(b)(1)(B) authorizes modifications of a safeguard measure in response to an industry petition only if they are trade liberalizing—as indicated by the fact that such modifications can occur only if "the domestic industry has made a positive adjustment to import competition." Section 601(6) of the Trade Act of 1974 also explains that for purposes of the Act, "[t]he term 'modification,' as applied to any duty or other import restriction, includes the elimination of any duty or other import restriction," which indicates that modifications under the Act generally were intended by Congress to be trade liberalizing, rather than trade restricting. 19 U.S.C § 2481(6).

53. Both changes to the CSPV safeguard measure proclaimed in the Modification Proclamation—the withdrawal of the bifacial module exclusion and the increase in the duty rate in year four of the measure—placed further restrictions on trade. The changes to the CSPV safeguard measure were therefore made in violation of the substantive limitations of Section 204 of the Trade Act governing modifications of safeguard actions and must be set aside as action involving "a clear misconstruction of the governing statute . . . or action outside delegated authority." *Silfab*, 892 F.3d at 1346.

54. Section 204(b) of the Trade Act of 1974, 19 U.S.C. § 2254(b), also sets procedural requirements that must be followed and requires certain findings to be made by the President before a safeguard action can be modified. But those prerequisites to Presidential action regarding the petition were not satisfied.

55. Among other things, the President failed to make the finding that is required to take action under Section 204(b)(1)(B)—that "the domestic industry *has made* a positive adjustment to import competition." 19 U.S.C. § 2254(b)(1)(B) (emphasis added). Section 201(b)(1) provides that "a positive adjustment to import competition occurs when (A) the domestic industry (i) is able to compete successfully with imports after actions taken under section 2254 of this title terminate, or (ii) the domestic industry experiences an orderly transfer of resources to other productive pursuits; and (B) dislocated workers in the industry experience an orderly transition to productive pursuits." 19 U.S.C. § 2251(b)(1). The President found only that the domestic industry "*has begun* to make positive adjustments to import competition," Modification Proclamation, 85 Fed. Reg. at 65,640 (emphasis added), which is not a finding that the industry "has made" the adjustment required for action under Section 204(b)(1)(B).

56. Moreover, the President failed to show that "a majority of the representatives of the domestic industry" submitted "a petition requesting such reduction, modification, or termination on such basis." The President did not identify the representatives of the domestic industry that he claimed had petitioned for a modification, and the government has not published the claimed petition or otherwise made it available for review. Upon information and belief, no petition meeting the criteria of Section 204(b)(1)(B) was submitted to the President prior to his issuance of the Modification Proclamation.

57. The changes to the CSPV safeguard measure proclaimed in the Modification Proclamation—the withdrawal of the bifacial module exclusion and the change in the duty rate in year four of the measure—were therefore made in violation of the procedural requirements of Section 204 of the Trade Act governing modifications of safeguard actions. The Modification Proclamation must therefore be set aside as action involving "a clear misconstruction of the governing statute [or] a significant procedural violation." *Silfab*, 892 F.3d at 1346.

## COUNT TWO

## (DECLARATORY JUDGMENT—VIOLATION OF SECTION 203 OF THE TRADE ACT)

58. Paragraphs 1 through 57 of this Complaint are hereby incorporated by reference.

59. Section 203(e)(7) of the Trade Act of 1974, 19 U.S.C. § 2253(e)(7), does not permit a safeguard measure to be re-imposed on an article for a period of two years after the prior measure terminated.

60. The prior action terminated with respect to bifacial CSPV panels in June 2019, when the exclusion for bifacial CSPV panels was granted. Accordingly, "no new action may be taken" to re-impose a safeguard measure on those panels until June 2021 at the earliest.

61. The withdrawal of the exclusion for bifacial CSPV modules in October 2020 results in the imposition of safeguard duties on those modules less than two years after a safeguard measure was terminated with respect to those modules, in violation of Section 203(e)(7) of the Trade Act.

62. Accordingly, the Modification Proclamation's withdrawal of the exclusion must be set aside as action involving "a clear misconstruction of the governing statute, a significant procedural violation, or action outside delegated authority." *Silfab*, 892 F.3d at 1346.

## COUNT THREE

## (DECLARATORY JUDGMENT—VIOLATION OF SECTION 201 OF THE TRADE ACT)

63. Paragraphs 1 through 62 of this Complaint are hereby incorporated by reference.

64. Section 201(a) of the Trade Act of 1974 provides that "the President, in accordance with this part, shall take all appropriate and feasible action within his power which the President determines will facilitate efforts by the domestic industry to make a positive adjustment to import competition and provide greater economic and social benefits than costs." 19 U.S.C. § 2251(a). Section 201 does not exclude action taken in accordance with Section 204 from the requirement that the action "provide greater economic and social benefits than costs."

65. In issuing the Modification Proclamation, the President failed to consider and did not make any determination regarding the relative economic and social benefits and costs before modifying the safeguard measure.

66. The President therefore failed to comply with the procedural and substantive requirements of the statute, and the Modification Proclamation must be set aside as action

involving "a clear misconstruction of the governing statute, a significant procedural violation, or action outside delegated authority." *Silfab*, 892 F.3d at 1346.

## **DEMAND FOR JUDGMENT AND RELIEF**

WHEREFORE, Plaintiff respectfully requests that this Court:

67. Issue a declaratory judgment that the Modification Proclamation is unlawful and therefore null and void;

68. Order that any increased Section 201 safeguard duties collected directly from Plaintiff pursuant to the Modification Proclamation be refunded, with interest; and

69. Provide such further relief as this Court deems just and proper.

Respectfully submitted,

/s/ Chunlian (Lian) Yang
Chunlian (Lian) Yang
Bobbi Jo Shannon
Lucas Queiroz Pires
**ALSTON & BIRD LLP**
950 F Street NW
Washington, D.C. 20004
(202) 239-3490
Lian.Yang@Alston.com

*Counsel to LONGi Solar Technology (U.S.), Inc.*